Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

Civil Action No. 08-2573

In Regard to the Matter of:

Bayside State Prison Litigation

OPINION/REPORT OF THE SPECIAL MASTER

TODD DeWITT, JR.

-vs-

WILLIAM H. FAUVER, et al,

Defendants.

\* \* \* \*

TUESDAY, OCTOBER 28, 2008

\* \* \* \*

BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER

October 28, 2008

Page 2

```
 1
 2
 3
 4            Transcript of proceedings in the above
 5   matter taken by Theresa O. Mastroianni, Certified
 6   Court Reporter, license number 30X100085700, and
 7   Notary Public of the State of New Jersey at the
 8   United States District Court House, One Gerry Plaza,
 9   Camden, New Jersey, 08102, commencing at 2:30 PM.
10
11
12
13
14
15
16
17
18
19
20            MASTROIANNI & FORMAROLI, INC.
21        Certified Court Reporting & Videoconferencing
22                 251 South White Horse Pike
23                  Audubon, New Jersey 08106
24                       856-546-1100
25
```

```
 1
 2   A P P E A R A N C E S:
 3
 4
         JAIME KAIGH, ESQUIRE
 5       32 NORTH BLACK HORSE PIKE
         BLACKWOOD, NEW JERSEY  08012
 6       856-232-3337
         856-232-4561
 7       ATTORNEYS FOR THE PLAINTIFFS
 8
 9
         RODNEY D. RAY, ESQUIRE
10       32 NORTH BLACK HORSE PIKE
         BLACKWOOD, NEW JERSEY  08012
11       856-232-3337
         856-232-4561
12       ATTORNEYS FOR THE PLAINTIFFS
13
14
         ROSELLI & GRIEGEL, PC
15       BY:  MARK ROSELLI, ESQUIRE
              - and -
16       BY:  JAMES LAZZARO ESQUIRE
         1337 STATE HIGHWAY 33
17       HAMILTON SQUARE, NEW JERSEY  08690
         609-586-2257
18       ATTORNEYS FOR THE DEFENDANTS
19
20
21
22
23
24
25
```

1          Turn now to reopening the matter for a
2    decision of Todd DeWitt, docket number 08-2573.
3          The following constitutes the Special
4    Master's determination regarding Mr. DeWitt's
5    complaint.  This opinion/report is being issued
6    pursuant to the Order of Reference to a Special
7    Master and the Special Master's Agreement and the
8    guiding principles of law which underlie this
9    decision to be applied to the facts upon which it is
10   based as set forth in the jury instructions in the
11   Walker and Mejias jury charges to the extent
12   applicable to the allegations in Mr. DeWitt's case.
13          As finalized after review under Local
14   Civil Rule 52.1, the transcript of this oral opinion
15   will constitute the written report required by
16   paragraph seven of the Order of Reference to a
17   Special Master.
18          Mr. DeWitt was housed in Trailer Four
19   East and asserts injuries resulting from his
20   extraction from that trailer on the 1st of August,
21   1997, merely a couple of days after the death of
22   Officer Baker, and it's been confirmed by Exhibit
23   D-249 A that the SOG unit was in there for that
24   extraction in order for the trailer to be searched
25   from and after five o'clock PM on August 1st, 1997.

1           For reasons that I'll elaborate upon
2   further, I find Mr. DeWitt has sustained his claim
3   based upon the conduct of the officers in his cubicle
4   or cell area, as however it may best be described, at
5   the time of the extraction.
6           The relevant portion of his testimony
7   begins at page 78, line 11 of the September 11, 2008
8   transcript, and he's talking about the arrival of the
9   SOG officers:  "Tell me what you heard.
10          I heard them screaming and hollering
11  to, for people to get face down on the bunk, get face
12  down on the bunk.  They started coming down and as
13  they were coming down the tier, they were telling us
14  to get up and strip down.  If you weren't getting out
15  of the bed fast enough, they were throwing you on the
16  ground.
17          When they instructed you to strip down,
18  what did you do?
19          I was -- there was a bunk bed, so there
20  was a guy on top.  When he got out of the bunk, there
21  was no room for me to get out of the bed.  They
22  started screaming for me to get out of the bed, get
23  out.  There was no place for me to go.  He was
24  already laying naked on the floor.
25          Who was laying naked on the floor?

1                    The guy in the top bunk.

2                    So what happened next?

3                    I wasn't getting out of the bed fast

4      enough, so they snatched me by my collar and slammed

5      me on the ground.

6                    Do you know who snatched you by the

7      collar?

8                    I couldn't tell you their names, no.

9      There was SOG -- it was the SOG squad officers.

10     There was a bunch of them.  It's a little area.  And

11     they were trying to all cram in that little area.

12     There was no place for you to go.

13                   Can you describe the SOG officers?

14                   Can I describe them?

15                   What were they wearing?  How were they

16     dressed?

17                   Dressed in black with black helmets,

18     with visors down, knee pads, sticks, like pads across

19     here.

20                   How many officers entered your area

21     where you were bunked.

22                   One time -- I noticed about four or

23     five at one time.

24                   At the time you were snatched off the

25     bunk, you said you couldn't identify the officer who

1   snatched you.
2           No, I couldn't.  I know he was a SOG
3   officer by what he was wearing.
4           And what happened to you as a result of
5   being snatched off the bunk?
6           When they slammed me on the ground,
7   they started stomping you and trying to kick you.  I
8   got kicked in the testicles.
9           Specifically what happened to you?
10  They started kicking you?
11          They started kicking me, yes.
12          How many times were you kicked?
13          Four, five, six.  A number of times.  I
14  remember getting kicked in the legs, in the hips.
15  And then I got kicked in the testicles and I couldn't
16  catch my breath.  I was on my hands and knees, they
17  were telling me to get up.  I can't even breathe."
18          In the course of his testimony after
19  that, he talks about other incidents and other
20  handling, if you will, by the SOG officers in the
21  course of the events of that day.
22          I do not find that any of those are
23  actionable as such, nor do they, if you will, enhance
24  or tip the balance in this case.  But I do find that
25  this treatment in the cubicle area or bunk area

1    certainly, by any and all definitions, which the jury

2    instructions provide for us, constitutes excessive,

3    unnecessary and sadistic force for the purpose of

4    inflicting pain and punishment.  Essentially, the

5    officers, by their conduct, put Mr. DeWitt in an

6    impossible situation.  I mean, it clearly is

7    demeaning, to say the very least, to require him to

8    strip naked and then lie on top of his bunk mate who

9    was also naked.  What the SOG officers might have

10   made of that hardly needs explanation here.  So

11   basically he was in a situation where he had to wait

12   his turn until they were finished moving the man from

13   the upper bunk, and they would have none of that.  So

14   they threw him down on top of this man anyway, and

15   then proceeded to kick him as he described.  I find

16   no reason to think otherwise.

17              Now, Mr. DeSalvo, a new officer at that

18   time, was assigned to the trailer and had a good view

19   of this particular wing.  I believe it was classified

20   as D wing.  He believed he would be in a position to

21   see if this type of activity, this kicking activity,

22   were taking place.  However, he did acknowledge that

23   because of the partitions in these bunk units, he did

24   not have a clear view of the bunk areas themselves or

25   the floor space between them.  His view essentially

1  ended right at or near the end of the bunks in

2  question here.  And while he might perhaps, if he had

3  plain view, have been able to see an officer at the

4  end of that bunk kicking a prone inmate, let us

5  remember that Mr. DeWitt testified that there were

6  four or five officers crowded in the immediate area.

7  It is equally plausible that Mr. DeSalvo's view could

8  have been shielded from the officer actually

9  inflicting this punishment by the others standing

10 around him.  I take note, among other things, for

11 instance, that in much of the record that's been

12 generated here, even when extractions or movements

13 are being filmed by the Internal Affairs officers,

14 the large crowd of SOG officers in a confined area

15 often has blocked, in whole or in part, the cameras

16 from making the best possible video recordings of the

17 events.

18            So I determine in this case that Mr.

19 DeWitt has sustained his claim in connection with

20 injuries inflicted upon him when confronted in his

21 cell with this Hobson's choice, which the SOG

22 officers then chose to take full advantage of.

23            Now, I understand also, however, that

24 there is an exhaustion issue, and that matter is

25 addressed throughout the transcript, and more

1   particularly with regard to the question of Mr.

2   DeWitt's fear.  I've examined, in particular, the

3   evidence appearing at pages 107 through 112 of the

4   transcript which delve into these matters.

5           As I've mentioned to you before, I have

6   concluded that there are circumstances (in some cases

7   enhanced by those within the prison system to

8   dissuade or discourage an inmate from pursuing

9   potential administrative remedies) where it can truly

10  be said that those remedies are not available.  And I

11  talked about fear being one of them, although there

12  are some others.

13          Here at page 107, and this isn't the

14  only page it's discussed, he talks in terms of being

15  about to advise a doctor at Bayside State Prison

16  about what happened to him.  However, he also

17  mentions that he had a parole date at that time; he

18  was scheduled to be paroled in October of '97, and

19  indeed was.  When discussing this matter with the

20  doctor at some time after the assault, the doctor

21  advised him, and I'm not saying by way of threat, but

22  merely, if you will, as a matter of information,

23  that, in Mr. DeWitt's words, "When I started to tell

24  him about what went on, he said that if I wanted to

25  have it resolved, I could stay longer."  What this

1   means is, of course, for this matter to have been

2   pursued medically, and I find by proper inference,

3   administratively, it could have imperiled his parole

4   date.  No small wonder that he chose not to pursue

5   this matter through either medical or administrative

6   remedies given the very short time left at Bayside.

7           Now, it's also developed on the record,

8   however, that shortly after parole he wound up being

9   reincarcerated and went to East Jersey State Prison

10  somewhere in the vicinity of 1998 where he remained

11  until 2004, at least in that stint.  Accordingly, as

12  of September, 1999, he had available to him and up

13  until that date the opportunity to pursue

14  administrative remedies at East Jersey.

15          I've already made a determination in a

16  companion case today that East Jersey State Prison

17  did provide administrative remedy procedures that

18  would have allowed him to pursue a complaint about

19  something that had occurred at Bayside.

20          His testimony on this subject includes

21  an excerpt, among others, at page 110 beginning at

22  line 15.

23          "Up through September of 1999 you never

24  filed an administrative remedy form while in East

25  Jersey State Prison, correct?

1          I only filed the administrative remedy
2  form because I had to.
3          I didn't file it because I didn't want
4  to have the repercussions of filing it in East Jersey
5  or at Bayside.
6          You were afraid while you were in
7  Bayside to file it, right?
8          Yes.
9          And then you got out of prison.  And
10 you went back to prison.  And you were afraid in East
11 Jersey State Prison to file it.  Is that your
12 testimony?
13         Yes."
14         On redirect the subject is addressed
15 again at page 112.
16         "Could you identify any of the SOG
17 officers at Bayside that were involved in your
18 incident?
19         No, I can't.
20         And do you know whether or not any of
21 those officers came from East Jersey State Prison?
22         No, I don't.  Alls I know is what I
23 hear, that officers come from all over, from
24 different prisons.
25         So you felt threatened at East Jersey

1     State Prison?

2                 Leery.

3                 I'm sorry, I didn't hear you.

4                 I said leery."

5                 Now, one I suppose might say that

6     merely feeling leery of something may not rise to the

7     level of true fear or apprehension that would excuse

8     exhaustion of remedies, but I've determined in the

9     testimony here as a whole that this man, up through

10    the time of the September, 1999 date that's

11    significant here, did indeed feel fearful of

12    retaliation should he pursue his administrative

13    remedies.  And the presence of SOG officers

14    throughout the system, of course, led to at least the

15    possibility that officers from East Jersey were

16    involved in the Bayside detail in August of 1997 and

17    could seek retaliation against him there.

18                This is a close case on exhaustion, I

19    must say, but I find as a mixed question of fact and

20    law, that to Mr. DeWitt, under his circumstances and

21    in his state of mind, a reasonable one under all of

22    the circumstances, the administrative remedy provided

23    in the East Jersey State Prison handbook was not

24    truly available to him as a safe and appropriate

25    course to bring to the attention of authorities the

```
 1    serious attack upon him at the time of the extraction

 2    from his bunk area.

 3              I do note, however, that the kicks

 4    which he endured, including of course the kick in the

 5    testicles, while extremely painful at the outset, did

 6    not lead to any permanency.

 7              There was indeed excessive unnecessary

 8    and sadistic force imposed upon Mr. DeWitt here

 9    within the comtemplation of applicable legal

10    principles.  However, in light of the fact that this

11    attack was not prolonged and was not indeed repeated

12    even in the course of that day, while actionable for

13    recovery of compensatory damages, I do not find that

14    this assault visited upon him rose to the level of

15    being so egregious as to support a claim for punitive

16    damages, at least against the unidentified officers

17    who were with him and including the one who inflicted

18    this injury.

19              Therefore, while I make a finding that

20    the conduct, although actionable, supports an award

21    of compensatory damages, it was not so egregious as

22    to support an award of punitive damages under

23    applicable legal standards.

24              Finally, although not every item of

25    evidence has been discussed in this opinion/report,
```

1   all evidence presented to the Special Master was

2   reviewed and considered.

3           I find that the injury inflicted here

4   is actionable.  I find that the injury was acute

5   initially, although not prolonged or permanent.  Of

6   course, it doesn't take much imagination to consider

7   and evaluate the acuteness and severity of the pain

8   in the short run when you are kicked in the

9   testicles.  It was indeed severe, although not

10  prolonged.

11          Accordingly I recommend in this report

12  that the District Court enter an award of

13  compensatory damages in the amount of eight thousand

14  dollars in Mr. DeWitt's favor.

15

16

17

18

19

20

21

22

23

24

25

1        C E R T I F I C A T E

2

3        I, Theresa O. Mastroianni, a Notary Public and

4    Certified Shorthand Reporter of the State of New

5    Jersey, do hereby certify that the foregoing is a

6    true and accurate transcript of the testimony as

7    taken stenographically by and before me at the time,

8    place, and on the date hereinbefore set forth.

9        I DO FURTHER CERTIFY that I am neither a

10   relative nor employee nor attorney nor counsel of any

11   of the parties to this action, and that I am neither

12   a relative nor employee of such attorney or counsel,

13   and that I am not financially interested in the

14   action.

15

16

17

18

19   *Theresa O. Mastroianni*

     Theresa O. Mastroianni, C.S.R.

20   Notary Public, State of New Jersey

     My Commission Expires May 5, 2010

21   Certificate No. XI0857

     Date:  October 28, 2008

22

23

24

25

**A**

able 9:3
accurate 16:6
acknowledge 8:22
action 1:2 16:11 16:14
actionable 7:23 14:12,20 15:4
activity 8:21,21
acute 15:4
acuteness 15:7
addressed 9:25 12:14
administrative 10:9 11:5,14 11:17,24 12:1 13:12,22
administrative... 11:3
advantage 9:22
advise 10:15
advised 10:21
Affairs 9:13
afraid 12:6,10
Agreement 4:7
al 1:9
allegations 4:12
allowed 11:18
Alls 12:22
amount 15:13
anyway 8:14
appearing 10:3
applicable 4:12 14:9,23
applied 4:9
apprehension 13:7
appropriate 13:24
area 5:4 6:10,11 6:20 7:25,25 9:6,14 14:2
areas 8:24
arrival 5:8

assault 10:20 14:14
asserts 4:19
assigned 8:18
attack 14:1,11
attention 13:25
attorney 16:10 16:12
ATTORNEYS 3:7,12,18
Audubon 2:23
August 4:20,25 13:16
authorities 13:25
available 10:10 11:12 13:24
award 14:20,22 15:12

**B**

back 12:10
Baker 4:22
balance 7:24
based 4:10 5:3
basically 8:11
Bayside 1:6 10:15 11:6,19 12:5,7,17 13:16
bed 5:15,19,21 5:22 6:3
beginning 11:21
begins 5:7
believe 8:19
believed 8:20
best 5:4 9:16
BISSELL 1:21
black 3:5,10 6:17,17
BLACKWOOD 3:5,10
blocked 9:15
breath 7:16
breathe 7:17
bring 13:25

bunch 6:10
bunk 5:11,12,19 5:20 6:1,25 7:5 7:25 8:8,13,23 8:24 9:4 14:2
bunked 6:21
bunks 9:1

**C**

C 3:2 16:1,1
Camden 2:9
cameras 9:15
case 4:12 7:24 9:18 11:16 13:18
cases 10:6
catch 7:16
cell 5:4 9:21
certainly 8:1
Certificate 16:21
Certified 2:5,21 16:4
certify 16:5,9
charges 4:11
choice 9:21
chose 9:22 11:4
circumstances 10:6 13:20,22
Civil 1:2 4:14
claim 5:2 9:19 14:15
classified 8:19
clear 8:24
clearly 8:6
close 13:18
collar 6:4,7
come 12:23
coming 5:12,13
commencing 2:9
Commission 16:20
companion 11:16
compensatory 14:13,21 15:13

complaint 4:5 11:18
comtemplation 14:9
concluded 10:6
conduct 5:3 8:5 14:20
confined 9:14
confirmed 4:22
confronted 9:20
connection 9:19
consider 15:6
considered 15:2
constitute 4:15
constitutes 4:3 8:2
correct 11:25
counsel 16:10,12
couple 4:21
course 7:18,21 11:1 13:14,25 14:4,12 15:6
Court 1:1 2:6,8 2:21 15:12
cram 6:11
crowd 9:14
crowded 9:6
cubicle 5:3 7:25
C.S.R 16:19

**D**

D 3:9 8:20
damages 14:13 14:16,21,22 15:13
date 10:17 11:4 11:13 13:10 16:8,21
day 7:21 14:12
days 4:21
death 4:21
decision 4:2,9
Defendants 1:10 3:18
definitions 8:1
delve 10:4

demeaning 8:7
DeSalvo 8:17
DeSalvo's 9:7
describe 6:13,14
described 5:4 8:15
detail 13:16
determination 4:4 11:15
determine 9:18
determined 13:8
developed 11:7
DeWITT 1:7 4:2 4:18 5:2 8:5 9:5,19 13:20 14:8
DeWitt's 4:4,12 10:2,23 15:14
different 12:24
discourage 10:8
discussed 10:14 14:25
discussing 10:19
dissuade 10:8
District 1:1,1 2:8 15:12
docket 4:2
doctor 10:15,20 10:20
dollars 15:14
dressed 6:16,17
D-249 4:23

**E**

E 3:2,2 16:1,1
East 4:19 11:9 11:14,16,24 12:4,10,21,25 13:15,23
egregious 14:15 14:21
eight 15:13
either 11:5
elaborate 5:1
employee 16:10 16:12

| | | | | |
|---|---|---|---|---|
| ended 9:1 | file 12:3,7,11 | **HAMILTON** | 9:20 | laying 5:24,25 |
| endured 14:4 | filed 11:24 12:1 | 3:17 | injury 14:18 | **LAZZARO** 3:16 |
| enhance 7:23 | filing 12:4 | handbook 13:23 | 15:3,4 | lead 14:6 |
| enhanced 10:7 | filmed 9:13 | handling 7:20 | inmate 9:4 10:8 | led 13:14 |
| enter 15:12 | finalized 4:13 | hands 7:16 | instance 9:11 | leery 13:2,4,6 |
| entered 6:20 | Finally 14:24 | happened 6:2 | instructed 5:17 | left 11:6 |
| equally 9:7 | financially | 7:4,9 10:16 | instructions | legal 14:9,23 |
| **ESQUIRE** 3:4,9 | 16:13 | hear 12:23 13:3 | 4:10 8:2 | legs 7:14 |
| 3:15,16 | find 5:2 7:22,24 | heard 5:9,10 | interested 16:13 | level 13:7 14:14 |
| essentially 8:4 | 8:15 11:2 | helmets 6:17 | Internal 9:13 | license 2:6 |
| 8:25 | 13:19 14:13 | hereinbefore | involved 12:17 | lie 8:8 |
| et 1:9 | 15:3,4 | 16:8 | 13:16 | light 14:10 |
| evaluate 15:7 | finding 14:19 | **HIGHWAY** | issue 9:24 | line 5:7 11:22 |
| events 7:21 9:17 | finished 8:12 | 3:16 | issued 4:5 | **Litigation** 1:6 |
| evidence 10:3 | five 4:25 6:23 | hips 7:14 | item 14:24 | little 6:10,11 |
| 14:25 15:1 | 7:13 9:6 | Hobson's 9:21 | | Local 4:13 |
| examined 10:2 | floor 5:24,25 | hollering 5:10 | **J** | longer 10:25 |
| excerpt 11:21 | 8:25 | **HONORABLE** | **JAIME** 3:4 | |
| excessive 8:2 | following 4:3 | 1:21 | **JAMES** 3:16 | **M** |
| 14:7 | force 8:3 14:8 | Horse 2:22 3:5 | **Jersey** 1:1 2:7,9 | making 9:16 |
| excuse 13:7 | foregoing 16:5 | 3:10 | 2:23 3:5,10,17 | man 8:12,14 |
| exhaustion 9:24 | form 11:24 12:2 | House 2:8 | 11:9,14,16,25 | 13:9 |
| 13:8,18 | **FORMAROLI** | housed 4:18 | 12:4,11,21,25 | **MARK** 3:15 |
| Exhibit 4:22 | 2:20 | | 13:15,23 16:5 | Master 1:7,21 |
| Expires 16:20 | forth 4:10 16:8 | **I** | 16:20 | 4:7,17 15:1 |
| explanation | four 4:18 6:22 | identify 6:25 | **JOHN** 1:21 | Master's 4:4,7 |
| 8:10 | 7:13 9:6 | 12:16 | **JR** 1:7 | Mastroianni 2:5 |
| extent 4:11 | full 9:22 | imagination | jury 4:10,11 8:1 | 2:20 16:3,19 |
| extraction 4:20 | further 5:2 16:9 | 15:6 | | mate 8:8 |
| 4:24 5:5 14:1 | | immediate 9:6 | **K** | matter 1:5 2:5 |
| extractions 9:12 | **G** | imperiled 11:3 | **KAIGH** 3:4 | 4:1 9:24 10:19 |
| extremely 14:5 | generated 9:12 | imposed 14:8 | kick 7:7 8:15 | 10:22 11:1,5 |
| | Gerry 2:8 | impossible 8:6 | 14:4 | matters 10:4 |
| **F** | getting 5:14 6:3 | incident 12:18 | kicked 7:8,12,14 | mean 8:6 |
| F 16:1 | 7:14 | incidents 7:19 | 7:15 15:8 | means 11:1 |
| face 5:11,11 | given 11:6 | includes 11:20 | kicking 7:10,11 | medical 11:5 |
| fact 13:19 14:10 | go 5:23 6:12 | including 14:4 | 8:21 9:4 | medically 11:2 |
| facts 4:9 | good 8:18 | 14:17 | kicks 14:3 | Mejias 4:11 |
| fast 5:15 6:3 | **GRIEGEL** 3:14 | inference 11:2 | knee 6:18 | mentioned 10:5 |
| **FAUVER** 1:9 | ground 5:16 6:5 | inflicted 9:20 | knees 7:16 | mentions 10:17 |
| favor 15:14 | 7:6 | 14:17 15:3 | know 6:6 7:2 | merely 4:21 |
| fear 10:2,11 13:7 | guiding 4:8 | inflicting 8:4 9:9 | 12:20,22 | 10:22 13:6 |
| fearful 13:11 | guy 5:20 6:1 | information | | mind 13:21 |
| feel 13:11 | | 10:22 | **L** | mixed 13:19 |
| feeling 13:6 | **H** | initially 15:5 | large 9:14 | movements 9:12 |
| felt 12:25 | H 1:9 | injuries 4:19 | law 4:8 13:20 | moving 8:12 |

**N**

N 3:2
naked 5:24,25 8:8,9
names 6:8
near 9:1
needs 8:10
neither 16:9,11
never 11:23
new 1:1 2:7,9,23 3:5,10,17 8:17 16:4,20
NORTH 3:5,10
Notary 2:7 16:3 16:20
note 9:10 14:3
noticed 6:22
number 2:6 4:2 7:13

**O**

O 2:5 16:3,19
occurred 11:19
October 1:16 10:18 16:21
officer 4:22 6:25 7:3 8:17 9:3,8
officers 5:3,9 6:9 6:13,20 7:20 8:5,9 9:6,13,14 9:22 12:17,21 12:23 13:13,15 14:16
opinion 4:14
opinion/report 1:6 4:5 14:25
opportunity 11:13
oral 4:14
order 4:6,16,24
outset 14:5
o'clock 4:25

**P**

P 3:2,2
pads 6:18,18
page 5:7 10:13 10:14 11:21 12:15
pages 10:3
pain 8:4 15:7
painful 14:5
paragraph 4:16
parole 10:17 11:3,8
paroled 10:18
part 9:15
particular 8:19 10:2
particularly 10:1
parties 16:11
partitions 8:23
PC 3:14
people 5:11
permanency 14:6
permanent 15:5
Pike 2:22 3:5,10
place 5:23 6:12 8:22 16:8
plain 9:3
PLAINTIFFS 3:7,12
plausible 9:7
Plaza 2:8
PM 2:9 4:25
portion 5:6
position 8:20
possibility 13:15
possible 9:16
potential 10:9
presence 13:13
presented 15:1
principles 4:8 14:10
prison 1:6 10:7 10:15 11:9,16 11:25 12:9,10 12:11,21 13:1 13:23
prisons 12:24

procedures 11:17
proceeded 8:15
proccedings 2:4
prolonged 14:11 15:5,10
prone 9:4
proper 11:2
provide 8:2 11:17
provided 13:22
Public 2:7 16:3 16:20
punishment 8:4 9:9
punitive 14:15 14:22
purpose 8:3
pursuant 4:6
pursue 11:4,13 11:18 13:12
pursued 11:2
pursuing 10:8
put 8:5

**Q**

question 9:2 10:1 13:19

**R**

R 3:2 16:1
RAY 3:9
reason 8:16
reasonable 13:21
reasons 5:1
recommend 15:11
record 9:11 11:7
recordings 9:16
recovery 14:13
redirect 12:14
Reference 4:6 4:16
regard 1:5 10:1
regarding 4:4

reincarcerated 11:9
relative 16:10,12
relevant 5:6
remained 11:10
remedies 10:9 10:10 11:6,14 13:8,13
remedy 11:17,24 12:1 13:22
remember 7:14 9:5
reopening 4:1
repeated 14:11
repercussions 12:4
report 4:15 15:11
Reporter 2:6 16:4
Reporting 2:21
require 8:7
required 4:15
resolved 10:25
result 7:4
resulting 4:19
retaliation 13:12 13:17
review 4:13
reviewed 15:2
right 9:1 12:7
rise 13:6
RODNEY 3:9
room 5:21
rose 14:14
ROSELLI 3:14 3:15
Rule 4:14
run 15:8

**S**

S 3:2
sadistic 8:3 14:8
safe 13:24
saying 10:21
scheduled 10:18

screaming 5:10 5:22
searched 4:24
see 8:21 9:3
seek 13:17
September 5:7 11:12,23 13:10
serious 14:1
set 4:10 16:8
seven 4:16
severe 15:9
severity 15:7
shielded 9:8
short 11:6 15:8
Shorthand 16:4
shortly 11:8
significant 13:11
situation 8:6,11
six 7:13
slammed 6:4 7:6
small 11:4
snatched 6:4,6 6:24 7:1,5
SOG 4:23 5:9 6:9,9,13 7:2,20 8:9 9:14,21 12:16 13:13
sorry 13:3
South 2:22
space 8:25
Special 1:7,21 4:3,6,7,17 15:1
Specifically 7:9
squad 6:9
SQUARE 3:17
standards 14:23
standing 9:9
started 5:12,22 7:7,10,11 10:23
state 1:6 2:7 3:16 10:15 11:9,16,25 12:11,21 13:1 13:21,23 16:4 16:20

States 1:1 2:8
stay 10:25
stenographica...
  16:7
sticks 6:18
stint 11:11
stomping 7:7
strip 5:14,17 8:8
subject 11:20
  12:14
support 14:15
  14:22
supports 14:20
suppose 13:5
sustained 5:2
  9:19
system 10:7
  13:14

**T**

T 16:1,1
take 9:10,22
  15:6
taken 2:5 16:7
talked 10:11
talking 5:8
talks 7:19 10:14
tell 5:9 6:8 10:23
telling 5:13 7:17
terms 10:14
testicles 7:8,15
  14:5 15:9
testified 9:5
testimony 5:6
  7:18 11:20
  12:12 13:9
  16:6
Theresa 2:5 16:3
  16:19
things 9:10
think 8:16
thousand 15:13
threat 10:21
threatened
  12:25
threw 8:14

throwing 5:15
tier 5:13
time 5:5 6:22,23
  6:24 8:18
  10:17,20 11:6
  13:10 14:1
  16:7
times 7:12,13
tip 7:24
today 11:16
Todd 1:7 4:2
top 5:20 6:1 8:8
  8:14
trailer 4:18,20
  4:24 8:18
transcript 2:4
  4:14 5:8 9:25
  10:4 16:6
treatment 7:25
true 13:7 16:6
truly 10:9 13:24
trying 6:11 7:7
TUESDAY 1:16
turn 4:1 8:12
type 8:21

**U**

underlie 4:8
understand 9:23
unidentified
  14:16
unit 4:23
United 1:1 2:8
units 8:23
unnecessary 8:3
  14:7
upper 8:13

**V**

vicinity 11:10
video 9:16
Videoconfere...
  2:21
view 8:18,24,25
  9:3,7
visited 14:14

visors 6:18
vs 1:8

**W**

W 1:21
wait 8:11
Walker 4:11
want 12:3
wanted 10:24
wasn't 6:3
way 10:21
wearing 6:15 7:3
went 10:24 11:9
  12:10
weren't 5:14
White 2:22
WILLIAM 1:9
wing 8:19,20
wonder 11:4
words 10:23
wound 11:8
written 4:15

**X**

XI0857 16:21

**0**

08-2573 1:2 4:2
08012 3:5,10
08102 2:9
08106 2:23
08690 3:17

**1**

1st 4:20,25
107 10:3,13
11 5:7,7
110 11:21
112 10:3 12:15
1337 3:16
15 11:22
1997 4:21,25
  13:16
1998 11:10
1999 11:12,23
  13:10

**2**

2:30 2:9
2004 11:11
2008 1:16 5:7
  16:21
2010 16:20
251 2:22
28 1:16 16:21

**3**

30X100085700
  2:6
32 3:5,10
33 3:16

**5**

5 16:20
52.1 4:14

**6**

609-586-2257
  3:17

**7**

78 5:7

**8**

856-232-3337
  3:6,11
856-232-4561
  3:6,11
856-546-1100
  2:24

**9**

97 10:18